# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DAVID FERGUSON, GIL DE LA ROZA, and JAIME ARZADON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>S.C. JOHNSON & SON, INC.;<br><br>    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. NEGLIGENCE;<br>2. STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT;<br>3. STRICT PRODUCT LIABILITY – FAILURE TO WARN; and<br>4. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs David Ferguson, Gil De La Roza, and Jaime Arzadon ("Plaintiffs"), individually and on behalf of all others similarly situated throughout the States of Maine and California, files this Class Action Complaint against Defendant S.C. Johnson & Son, Inc. ("Defendant"), and in support state the following:

## NATURE OF THE ACTION

1.    This is a class action lawsuit by Plaintiffs, and others similarly situated, who purchased OFF! Familycare Insect Repellent Smooth and Dry aerosol spray (hereafter referred to as "OFF!") products that are manufactured, marketed, sold and/or distributed by Defendant. Defendant's Off! aerosol product has been independently tested and shown to be adulterated with excessive levels of benzene, a known human carcinogen. Excessive levels of benzene are present in *all* of Defendant's Off! aerosol products; a fact that was not disclosed in the product's labeling, advertisements, or otherwise, in violation of Maine and California common law. Plaintiffs and the putative class suffered economic damages due to Defendant's misconduct (as

1

CLASS ACTION COMPLAINT

set forth below) and they seek restitution for the full purchase price of the Off! product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and is a class action in which there are more than 100 class members and many members of the class are citizens of a state different than Defendant.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiff David Ferguson suffered economic injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendant conducts substantial business in this district, Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

4.      Plaintiff David Ferguson resides in Penobscot County, Maine. In approximately 2021, Plaintiff Ferguson purchased a can of OFF! Familycare Insect Repellent Smooth and Dry at Wal-Mart in Bangor, Maine. When purchasing Off!, Plaintiff Ferguson relied upon the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that Off! was properly manufactured, free from defects, safe for its intended use, and not adulterated or misbranded. Plaintiff Ferguson relied on these representations and

CLASS ACTION COMPLAINT

warranties in deciding to purchase Off!, and these representations and warranties were part of the basis of the bargain. Plaintiff Ferguson's Off! product has been tested by an independent laboratory and found to contain 2.01 parts per million ("ppm") of benzene, an amount that poses a risk to human health. Had Plaintiff Ferguson known that Off! was adulterated with excessive levels of benzene, he would not have purchased the product. Plaintiff suffered economic injury when he spent money to purchase Off! he would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

5.      Plaintiff Gil De La Roza resides in Richmond, California in the County of Contra Rosa. In approximately 2021, Plaintiff De La Roza purchased a can of OFF! Familycare Insect Repellent Smooth and Dry in Contra Rosa County. When purchasing Off!, Plaintiff De La Roza relied upon the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that Off! was properly manufactured, free from defects, safe for its intended use, and not adulterated or misbranded. Plaintiff De La Roza relied on these representations and warranties in deciding to purchase Off!, and these representations and warranties were part of the basis of the bargain. Had Plaintiff De La Roza known that Off! was adulterated with excessive levels of benzene, he would not have purchased the product. Plaintiff suffered economic injury when he spent money to purchase Off! he would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.      Plaintiff Jaime Arzadon resides in Daly City, California in the County of San Mateo. In 2023, Plaintiff Arzadon purchased a can of OFF! Familycare Insect Repellent Smooth and Dry at Walgreens in the San Mateo County. When purchasing Off!, Plaintiff Arzadon reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that Off! was properly manufactured, free from defects, safe for

3

CLASS ACTION COMPLAINT

its intended use, and not adulterated or misbranded. Plaintiff Arzadon relied on these representations and warranties in deciding to purchase Off!, and these representations and warranties were part of the basis of the bargain. Had Plaintiff Arzadon known that Off! was adulterated with excessive levels of benzene, she would not have purchased the product. Plaintiff suffered economic injury when he spent money to purchase Off! he would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

7.      Plaintiffs and the putative class members seek monetary damages to address the harm caused by Defendant's actions, so there is a substantial likelihood that the relief sought will redress the injuries.

8.      S.C. Johnson & Son, Inc. is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Wisconsin, with its principal place of business located at 1525 Howe Street, Racine, Wisconsin 53403.

9.      Defendant manufactures, distributes, markets and/or sells insect repellent products under the brand name Off! to consumers nationwide, including consumers in Maine and California.

## FACTUAL ALLEGATIONS

10.     At all relevant times, Defendant was in the business of, and did, design, research, manufacture, test, advertise, promote, market sell, distribute the pesticide Off!.

11.     Initially registered with the EPA in 2005, Off! is intended for human use as a broad-spectrum pesticide to repel mosquitoes, ticks, biting flies, gnats, chiggers, and fleas.

12.     According to the Off! label, DEET is the active ingredient making up 15% of the product. "Other ingredients" make up 85% of the product; these "other ingredients" are not identified on the label by name.

4

CLASS ACTION COMPLAINT

13.     Sprayed as an aerosol and intended to be applied directly onto the skin, Off! uses a polymer to trap DEET and slowly release it over the skin surfaces to provide protection against insects.

### EVIDENCE OF BENZENE IN OFF!

14.     On or about October 2021, counsel for Plaintiff Ferguson acquired a can of Mr. Ferguson's Off! product and submitted that can for analysis by an independent, certified testing lab.  The test result showed that Plaintiff Ferguson's Off! product contained 2.01 ppm of benzene.

15.     All of Defendant's Off! products are manufactured in the same manner.

16.     Defendant systematically included benzene in the manufacture of its Off! products, including Plaintiffs' products, during the class period.

17.     Defendant knew or should have known that Off! was contaminated with excessive levels of benzene and that testing of the products for benzene was necessary to protect Plaintiffs and putative class members from harmful levels of benzene exposure.

18.     Defendant failed to appropriately and adequately test Off! for the presence of benzene to protect Plaintiffs and the class from excessive levels of benzene exposure.

### EVIDENCE OF BENZENE'S DANGER

19.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years.

CLASS ACTION COMPLAINT

20.     As early as 1926, the National Safety Council reported that "[t]he most characteristic pathological effect of [benzene] is perhaps its destructive influence upon the cells of the blood and the blood forming organs."

21.     In 1948, the American Petroleum Institute reported that "[i]nasmuch as the body develops no tolerance to benzene, and as there is a wide variation in individual susceptibility, it is generally considered that the only absolutely safe concentration for benzene is zero."

22.     "Human exposure to benzene has been associated with a range of acute and long-term adverse health effects and diseases, including cancer and haematological effects."[1]

23.     A toxicity assessment by the Centers for Disease Control and Prevention has shown benzene can harm the central nervous system and may affect reproductive organs.[2]

24.     According to the World Health Organization, "Benzene is a genotoxic carcinogen in humans and no safe level of exposure can be recommended."[3]

25.     According to the National Cancer Institute, "[e]xposure to benzene increases the risk of developing leukemia and other blood disorders."[4]

26.     According to the National Toxicology Program ("NTP"), benzene is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[5]

27.     Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . .

---

[1] https://www.who.int/publications/i/item/WHO-CED-PHE-EPE-19.4.2.
[2] https://www.atsdr.cdc.gov/toxprofiles/tp3.pdf.
[3] WHO Guidelines for Indoor Air Quality: Selected Pollutants (2010).
[4] https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/benzene.
[5] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).

CLASS ACTION COMPLAINT

and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[6]
As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[7]

28.     The FDA also recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[8] and classifies benzene as a "Class 1" solvent that should be "avoided" in drug manufacturing.[9] FDA guidance provides: "Solvents in Class 1 [e.g. benzene] should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download.

29.     The EPA similarly recognizes the cancer risks of benzene, noting that "Benzene is classified as a 'known' human carcinogen (Category A) under the Risk Assessment Guidelines

---

[6] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.
[7] *Id.* at 34.
[8] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.
[9] https://www.fda.gov/media/71737/download.

CLASS ACTION COMPLAINT

of 1986."[10] "[B]enzene is characterized as a known human carcinogen for all routes of exposure based on convincing human evidence as well as supporting evidence from animal studies."[11]

30.      Due to its toxicity, EPA has set 0.0005 ppm as the maximum permissible level of benzene in drinking water, with a stated goal of "zero" ppm.[12]

31.      Researchers have found that "[e]ven in trace amounts, benzene is known to pose a health risk from exposure routes that include inhalation, ingestion, dermal absorption, and skin or eye contact."[13]

32.      Additional published peer reviewed literature supports these findings: "Our findings support the potential haematotoxicity of low-level benzene exposure (< 1 ppm)."[14]

33.      Direct benzene exposure through the skin is particularly concerning, because "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[15] Accordingly, The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers exposed or expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes or paths.[16]

---

[10] https://cfpub.epa.gov/ncea/iris2/chemicallanding.cfm?substance_nmbr=276.
[11] *Id.*
[12] https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations.
[13] Hudspeth, A., et al., Independent Sun Care Product Screening for Benzene Contamination, Environmental Health Perspectives, 130:3, Online Publication 29 March 2022.
[14] Koh D, Jeon H, Lee S, et al., The relationship between low-level benzene exposure and blood cell counts in Korean workers. *Occupational and Environmental Medicine* 2015; 72:421-427.
[15] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited September 6, 2022).
[16] *NIOSH Pocket Guide to Chemical Hazards - Benzene*, THE NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH (NIOSH), https://www.cdc.gov/niosh/npg/npgd0049.html (last visited September 6, 2022).

CLASS ACTION COMPLAINT

34.     As with other topically applied products, such as sunscreen, the application of insect repellent specifically increases the absorption rate of benzene through the skin, thereby increasing the risk of harm.[17]

### REGISTRATION OF PESTICIDES UNDER FEDERAL AND STATE LAW

35.     The manufacture, formulation and distribution of pesticides, such as Off!, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7. U.S.C. § 136 *et seq.* FIFRA requires that all pesticides be registered with the EPA prior to their distribution, sale, or use, except as described by FIFRA. 7 U.S.C. 136a(a).

36.     The EPA requires as part of the registration process, among other requirements, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment. Registration by the EPA, however, is not an assurance or finding of safety. The determination the EPA makes in registering or re-registering a product is not that the product is "safe," but rather that use of the product in accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136(a)(c)(5)(D).

37.     FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

38.     The EPA, and the States of Maine and California, have registered Off! product for distribution, sale, and manufacture: EPA registration number 4822-543; California registration number 4822-543-AA; Maine registration number 20200000845.

---

[17] *Valisure Detects Benzene in Sunscreen*, VALISURE BLOG (May 25, 2021), https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/.

CLASS ACTION COMPLAINT

39.     Off! is regulated by the U.S. EPA under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).[18]

40.     In California, Off! is regulated by the California Department of Pesticide Regulation under Food and Agricultural Code section 14005, and Cal. Code of Regs., title 3, section 6242.

41.     In Maine, Off! is regulated by the Department of Agriculture, Conservation and Forestry. The Board of Pesticides Control has the authority to regulate pesticides in Maine under the Maine Pesticide Control Act of 1975, 7 Me. Rev. Stat. Ann. §§ 601-625, and the Maine Board of Pesticides Control Law, 22 Me. Rev. Stat. Ann. §§ 1471-A to X.

42.     FIFRA generally requires that the registrant—S.C. Johnson & Son, Inc. in the case of Off!—conduct health and safety testing of pesticide products. The EPA has protocols governing the conduct of tests required for registration and the laboratory practices that must be followed in conducting these tests. The data produced by the registrant must be submitted to the EPA for review and evaluation. The government is not required, nor is it able, to perform the product tests that are required of the manufacturer.

43.     FIFRA provides that a pesticide is misbranded:

> (1) if its labeling "does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with ... are adequate to protect health" 7 U.S.C. § 136(q)(1)(F);
> (2) if its label "does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment" 7 U.S.C. § 136(q)(1)(G); or
> (3) if "the pesticide contains any substance or substances in quantities highly toxic to man, unless the label shall bear, in

---

[18] Title 40 Code of Federal Regulations, Part 156.

CLASS ACTION COMPLAINT

addition to any other manner required by this subchapter –
(i) the skull and crossbones; (ii) the word 'poison'
prominently in red on the background of distinctly
contrasting color; and (iii) a statement of a practical
treatment (first aid or otherwise) in case of poisoning by the
pesticide." 7 U.S.C. § 136(q)(2)(D).

44.     A pesticide product is further misbranded under FIFRA if its label contains a

statement that is "false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A)).

45.     Under FIFRA, the registration and approval of a label is not a defense to a claim

of misbranding. 7 U.S.C. § 136a(f)(2).

46.     Similarly, in strict liability, California law requires that manufacturers must

adequately warn of particular risks that were known or knowable in light of generally recognized

and prevailing best science and medical knowledge at the time of the manufacture and

distribution.

47.     In negligence, California law requires a manufacturer to warn of those risks that a

reasonably prudent manufacturer would have known and warned about.

48.     California law similarly requires that "[i]t is unlawful for any person to sell any

adulterated or misbranded pesticide." Cal. Food & Agric. Code § 12992.

49.     A pesticide is misbranded under California law if "(a) the packaging or label

bears any false or misleading statement . . . regarding the article or any ingredient or substance

that is contained in it" or "[i]t is labeled . . . so as to deceive or mislead the purchaser." Cal. Food

& Agric. Code § 12881.

50.     California law requires that a pesticide must contain "[w]arning or caution

statements, which are necessary, and if complied with, adequate to prevent injury to living man .

. . [and] must appear on the label in a place sufficiently prominent to warn the user, and must

state clearly and in nontechnical language the particular hazard involved in the use of the pesticide[.]" Cal. Code of Regs., title 3, section 6242.

51.     California law requires that "the label of every pesticide shall bear warnings or cautions which are necessary for the protection of the public[.]" Cal. Code of Regs., title 3, section 6242(a).

52.     Additionally, "the label of every pesticide which is highly toxic to man shall bear the word 'Danger' along with the word 'Poison' in red on contrasting background in immediate proximity to the skull and crossbones[.]" Cal. Code of Regs., title 3, section 6242(b).

53.     The scope of California's labeling requirements for pesticides specifically provides that "[t]he labeling requirements under California law meet, but do not exceed current U.S. EPA labeling requirements." Cal. Code of Regs., title 3, section 6243.

54.     The levels of benzene detected in Defendant's Off! product is potentially highly toxic to man with repeated or prolonged exposure. Defendant wrongfully advertised and sold its Off! product without any labeling to indicate to consumers that the product was adulterated with excessive levels of benzene, in violation of California law.

55.     In strict liability, Maine law requires that manufacturers must adequately warn of particular risks that were known or knowable in light of generally recognized and prevailing best science and medical knowledge at the time of the manufacture and distribution.

56.     In negligence, Maine law requires a manufacturer to warn of those risks that a reasonably prudent manufacturer would have known and warned about.

57.     Maine's Pesticide Control Act of 1975 ("Maine Pesticide Act") prohibits a person from distributing, selling, or offering for sale a "pesticide that is adulterated or misbranded." 7

CLASS ACTION COMPLAINT

Me. Rev. Stat. Ann. § 606(1)(E); *see also* § 605(1)(A). The Board of Pesticides Control is the enforcing official for violations under the Maine Pesticide Act. *Id.* at § 602.

58.    A pesticide is adulterated under the Maine Pesticide Act if "[t]he pesticide's strength or purity falls below the standard of quality as expressed on the labeling under which it is sold." Me. Rev. Stat. Ann. tit. 7 § 604(2)(A).

59.    A pesticide is misbranded under Maine Pesticide Act if (1) its labeling "bears any statement … relative to the pesticide or to its ingredients that is false or misleading in any particular", *Id.*, or (2) "does not contain a warning or caution statement that may be necessary and that, if complied with, together with any requirements imposed under FIFRA, Section 3(d), would be adequate to protect the health and environment." *Id.* at § 605(2)(B-1).

60.    The Maine Pesticide Act prohibits the distribution of a pesticide "if any of the claims made for it or any of the directions for its use or other labeling differs from the representations made in connection with its registration, or if the composition of a pesticide differs from its composition as represented in connection with its registration." Me. Rev. Stat. Ann. tit. 7 §§ 606(1)((B).

61.    Off! is adulterated under the Maine Pesticide Act because the Off! product's "purity falls below the standard of quality as expressed on the labeling under which it is sold" insofar as it is contaminated with excessive levels of benzene.

62.    Off! is misbranded under the Maine Pesticide Act because (1) its labeling claims to provide "familycare" against insects while at the same time subjecting unsuspecting consumers to the potentially harmful effects of excessive benzene exposure, which renders the label's "care" claim false and/or misleading, and (2) its labeling does not contain a warning or

caution statement regarding the presence of benzene in the product that may be necessary and would be adequate to protect human health.

63.     The distribution of Off! in Maine also violates Maine Pesticide Act because (1) the pesticide is adulterated and misbranded as set forth herein and (2) the composition of the pesticide (inclusive of benzene) differs from its composition as represented in connection with its registration. 7 Me. Rev. Stat. Ann. §§ 606(1)(E) & (B).

64.     The following image shows an example of the Off! insect repellent purchased by Plaintiffs and the putative class members:

CLASS ACTION COMPLAINT




65.     Accordingly, Defendant did not comply with Maine or California law with respect to its designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of Off!.

## CLASS ALLEGATIONS

66.      Plaintiffs bring this action on behalf of themselves and all others similarly situated

class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure

and seeks certification of the following class against Defendants for violations of California state

laws (the "Class"):

> All consumers who purchased OFF! Familycare Insect Repellent I
> Smooth and Dry aerosol spray in the United States and its territories
> from November 17, 2019 to the present for personal use or
> consumption.
>
> Excluded from the Class are individuals who allege personal bodily
> injury resulting from the use of OFF! Familycare Insect Repellent
> Smooth and Dry aerosol spray. Also excluded from this Class is
> Defendant, any parent companies, subsidiaries, and/or affiliates,
> officers, directors, legal representatives, employees, co-
> conspirators, all governmental entities, and any judge, justice or
> judicial officer presiding over this matter.

67.      In the alternative, Plaintiffs bring this action on behalf of themselves and all other

similarly situated Maine and California consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of

the Federal Rules of Civil Procedure and seeks certification of the following class:

**Maine Sub-Class**

> All consumers who purchased OFF! Familycare Insect Repellent
> Smooth and Dry aerosol spray in the State of Maine from November
> 17, 2019 to the present for personal use or consumption.
>
> Excluded from the Class are individuals who allege personal bodily
> injury resulting from the use of OFF! Familycare Insect Repellent
> Smooth and Dry aerosol spray. Also excluded from this Class is
> Defendant, any parent companies, subsidiaries, and/or affiliates,
> officers, directors, legal representatives, employees, co-
> conspirators, all governmental entities, and any judge, justice or
> judicial officer presiding over this matter.

**California Sub-Class**

16

CLASS ACTION COMPLAINT

All consumers who purchased OFF! Familycare Insect Repellent Smooth and Dry aerosol spray in the State of California from November 17, 2019 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of OFF! Familycare Insect Repellent Smooth and Dry aerosol spray. Also excluded from this Class is Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

68.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the proposed Class contains thousands of purchasers of Off! who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this time.

69.     Plaintiffs' claims are typical to those of all Class members because members of the class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's misleading claims that accompanied each and every Off! aerosol product. Plaintiffs are advancing the same claims and legal theories on behalf of herself and all members of the Class.

67.     Plaintiffs' claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiffs and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)     whether Defendant's Off! aerosol spray contains benzene;
(b)     whether Defendant's omissions are true, or are misleading, or objectively reasonably likely to deceive or mislead;
(c)     whether the alleged conduct constitutes violations of the laws asserted;
(d)     whether Defendant's alleged conduct violates public policy;
(e)     whether Defendant's engaged in false or misleading advertising; and

17
CLASS ACTION COMPLAINT

(f)     whether Plaintiffs and the Class members are entitled to damages and/or restitution and the proper measure of that loss.

68.     Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have retained counsel experienced in complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiffs intend to prosecute this claim vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

69.     A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiffs and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

(Negligence)

70.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

71.     Defendant had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of

Off! into the stream of commerce, including a duty to assure that the product would not cause users to be unreasonably and unnecessarily exposed to excessive levels of toxic substances like benzene.

72.     Defendant failed to exercise ordinary care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Off! into interstate commerce in that Defendant knew or should have known that Off! was adulterated with excessive levels of the carcinogen benzene, thus unreasonably and unnecessarily exposing users to a toxic substance.

73.     The negligence by the Defendant, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a) Manufacturing, producing, promoting, formulating, creating, and/or designing Off! without thoroughly testing it before distribution;

(b) Failing to test Off! and/or failing to adequately, sufficiently, and properly test Off!;

(c) Not conducting sufficient testing programs to determine whether or not Off! was safe for use; in that Defendant knew or should have known that Off! was contaminated and/or adulterated with benzene which rendered the product unsafe and unfit for use by reason of the dangers to its users;

(d) Not conducting sufficient testing programs and studies to determine Off!'s carcinogenic properties even after Defendant had knowledge that Off! is, was, or could be carcinogenic;

(e) Failing to conduct sufficient testing programs to determine the safety of "inert" ingredients and/or adjuvants contained within Off!, and the propensity of these ingredients to render Off! toxic or increase the toxicity of Off!;

(f) Negligently failing to adequately and correctly warn the Plaintiff, the public, and the EPA of the dangers of Off!;

(g) Negligently failing to petition the EPA to strengthen the warnings associated with Off!;

(h) Failing to provide adequate cautions and warnings to protect the health of users who would reasonably and foreseeably come into contact with Off!;

(i) Negligently marketing, advertising, and recommending the use of Off! without sufficient knowledge as to its dangerous

CLASS ACTION COMPLAINT

propensities;

(j) Negligently representing that Off! was safe for use for its intended purpose when, in fact, it was unsafe;

(k) Negligently representing that Off! had equivalent safety and efficacy as other forms of insect repellent products;

(l) Negligently designing Off! in a manner which was dangerous to its users;

(m) Negligently manufacturing Off! in a manner which was dangerous to its users;

(n) Negligently producing Off! in a manner which was dangerous to its users;

(o) Negligently formulating Off! in a manner which was dangerous to its users;

(p) Concealing information from the Plaintiffs and the public when Defendant knew, or should have known, that Off! was unsafe, dangerous, and/or non-conforming with EPA and California or Maine state regulations;

(q) Improperly concealing and/or misrepresenting information from the Plaintiffs, scientific and medical professionals, and/or the EPA, concerning the risks and dangers of Off! compared to other forms of insect repellents; and

(r) Negligently selling Off! with a false and misleading label.

74.    Defendant was negligent and/or violated Maine and California law in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of Off! in that it:

(a) Failed to use ordinary care in designing and manufacturing Off! so as to avoid the aforementioned risks to individuals when Off! was used as a pesticide;

(b) Failed to accompany its product with proper and/or accurate warnings regarding the presence of benzene and the possible adverse side effects associated with such exposure;

(c) Failed to conduct adequate testing, clinical testing and post-marketing surveillance to determine the presence of benzene and/or safety of Off!;

(d) Failed to conduct adequate testing, clinical testing, and post-marketing surveillance to determine the safety of Off!'s "inert" ingredients and/or adjuvants;

(e) Negligently misrepresented the evidence of Off!'s carcinogenicity; and

(f) Was otherwise careless and/or negligent.

75.    Despite the fact that Defendant knew or should have known that Off! was

CLASS ACTION COMPLAINT

adulterated with excessive levels of benzene which could cause unreasonably dangerous side effects, Defendant continued, and continues, to market, manufacture, distribute, and/or sell benzene-contaminated Off! to consumers.

76.     Defendant knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care, as set forth above.

77.     Defendant's violations of law and/or negligence were the proximate cause of Plaintiffs' economic loss.

78.     As a result of the foregoing acts and omissions, the Plaintiffs suffered financial loss.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory damages, together with interest and costs herein incurred, and all other relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

## SECOND CAUSE OF ACTION

(Strict Liability – Design Defect)

79.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

80.     Plaintiffs bring this strict liability claim against Defendant for defective design.

81.     At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting its Off! products, which is defective and unreasonably dangerous to consumers, including Plaintiffs, thereby placing Off! into the stream of commerce. These actions were under the ultimate control

CLASS ACTION COMPLAINT

and supervision of Defendant. At all times relevant to this litigation, Defendant designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed its Off! product used by the Plaintiffs, as described above.

82.     At all times relevant to this litigation, Defendant's Off! product was manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiffs.

83.     At all times relevant to this litigation, Defendant's Off! product reached the intended consumers and users in California and Maine and throughout the United States, including Plaintiffs, without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

84.     Defendant's Off! product, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in design and formulation in that when it left the hands of the Defendant's manufacturers and/or suppliers, it was unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

85.     Defendant's Off! product, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant was defective in design and formulation in that when it left the hands of Defendant's manufacturers and/or

suppliers, the foreseeable risks exceeded the alleged benefits associated with its design and formulation.

86.     At all times relevant to this action, Defendant knew or had reason to know that its Off! product was defective and was inherently dangerous and unsafe when used in the manner instructed and provided by Defendant.

87.     Therefore, at all times relevant to this litigation, Defendant's Off! product, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant was defective in design and formulation, in one or more of the following ways:

> (a) When placed in the stream of commerce, Defendant's Off! product was defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;
> (b) When placed in the stream of commerce, Defendant's Off! product was unreasonably dangerous in that it was hazardous and posed a risk of leukemia and other serious illnesses when used in a reasonably anticipated manner;
> (c) When placed in the stream of commerce, Defendant's Off! product contained unreasonably dangerous design defects and was not reasonably safe when used in a reasonably anticipated or intended manner;
> (d) Defendant did not sufficiently test, investigate, or study its Off! product for the presence of dangerous levels of benzene;
> (e) Exposure to Off! and high levels of benzene presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the pesticide;
> (f) Defendant knew or should have known at the time of marketing its Off! product that exposure to Off! and specifically, high levels of

CLASS ACTION COMPLAINT

benzene, could result in leukemia and other severe illnesses and injuries;

(g) Defendant did not conduct adequate post-marketing surveillance of its Off! product; and

(h) Defendant could have employed safer alternative designs and formulations.

88.     Plaintiffs were unknowingly exposed to excessive levels of benzene in Defendant's Off! product without knowledge of its dangerous characteristics.

89.     At all times relevant to this litigation, Plaintiffs used and/or were exposed to the use of Defendant's Off! product in an intended or reasonably foreseeable manner without knowledge of its dangerous characteristics.

90.     Plaintiffs could not have reasonably discovered the defects and risks associated with benzene exposure in Off! before or at the time of exposure.

91.     The potential harm caused by Defendant's Off! product far outweighed its benefit, rendering the product dangerous to an extent beyond that which an ordinary consumer would contemplate. Off! was and is more dangerous than alternative products and Defendant could have designed Off! to make it less dangerous. Indeed, at the time that Defendant designed Off!, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable—namely, that the product could be designed to work without the use of benzene.

92.     At the time the Off! product left Defendant's control, there was a practical, technically feasible and safer alternative design that would have prevented the economic harm

CLASS ACTION COMPLAINT

without substantially impairing the reasonably anticipated or intended function of Defendant's Off! product.

93.     Therefore, as a result of the unreasonably dangerous condition of its Off! product, Defendant is strictly liable to Plaintiffs and the putative Class.

94.     The defects in Defendant's Off! product were substantial and contributing factors in causing Plaintiffs' economic injuries, and, but for Defendant's misconduct and omissions, Plaintiffs would not have purchased Defendant's Off! product.

95.     As a direct and proximate result of Defendant placing its defective Off! product into the stream of commerce, Plaintiffs have suffered economic loss.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory damages, together with interest and costs herein incurred, and all other such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## THIRD CAUSE OF ACTION

### (Strict Product Liability - Failure to Warn)

96.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

97.     Defendant engaged in the business of selling, testing, distributing, supplying, manufacturing, marketing, and/or promoting Off!, and through that conduct have knowingly and intentionally placed Off! into the stream of commerce with full knowledge that it reaches consumers such as Plaintiffs who are exposed to it through ordinary and reasonably foreseeable uses.

98.     Defendant did in fact sell, distribute, supply, manufacture, and/or promote Off! to

CLASS ACTION COMPLAINT

Plaintiffs. Additionally, Defendant expected the Off! that it was selling, distributing, supplying, manufacturing, and/or promoting to reach - and Off! did in fact reach - consumers, including Plaintiffs, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

99.     At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of using benzene-contaminated Off! products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such a carcinogen.

100.    At all times herein mentioned, the Off! was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendant and at the time Plaintiffs were exposed to the product. The defective condition of Off! was due in part to the fact that it was not accompanied by proper warnings regarding the presence of benzene and its carcinogenic qualities and possible side effects, including developing leukemia and other blood-born diseases as a result of prolonged exposure and use.

101.    Off! did not contain a warning or caution statement, which was necessary and, if complied with, was adequate to protect the health of those exposed, in violation of 7 U.S.C. § 136j(a)(1)(E).

102.    Defendant's failure to include a warning or caution statement which was necessary and adequate to protect the health of those exposed, is in violation of the laws of the States of Maine and California.

103.    Defendant could have amended the label of Off! to provide additional warnings with respect to the presence of benzene.

104.    This defect caused economic injury to Plaintiffs, who purchased and used Off! in

CLASS ACTION COMPLAINT

its intended and foreseeable manner.

105.    At all times herein mentioned, Defendant had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, provide proper warnings, and take such steps to assure that the product did not cause users to be unnecessarily exposed to dangerous chemicals like benzene.

106.    Defendant labeled, distributed, and promoted Off! even though it was dangerous and unsafe for the use and purpose for which it was intended.

107.    Defendant failed to warn of the presence of benzene in its Off! product or of the nature and scope of the side effects associated with exposure to benzene—namely, its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of leukemia and other blood disorders with prolonged and extended exposure.

108.    Despite the fact that Defendant knew or should have known that Off! was adulterated and/or contaminated with excessive levels of benzene, Defendant failed to exercise reasonable care to warn of the dangerous carcinogenic properties and side effects of benzene in its Off! product, even though these side effects were known or reasonably scientifically knowable at the time of distribution.

109.    At the time of exposure, Plaintiffs could not have reasonably discovered any defect in Off! through the exercise of reasonable care.

110.    Defendant, as the manufacturers and/or distributors of Off!, are held to the level of knowledge of an expert in the field.

111.    Plaintiffs reasonably relied upon the skill, superior knowledge, and judgment of Defendant.

112.    Had Defendant properly disclosed the presence of benzene in Off! and the risks

associated with benzene exposure, Plaintiffs would not have purchased Off!.

113.    As a result of their inadequate warnings, Defendant's Off! product was defective and unreasonably dangerous when it left the possession and/or control of Defendant and used by Plaintiffs.

114.    As a direct and proximate result of Defendant's actions as alleged herein, and in such other ways to be later shown, the Off! product caused Plaintiffs to sustain economic injuries as herein alleged.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory damages, together with interest and costs herein incurred, and all other relief as this Court deems just and proper. Additionally, Plaintiffs demand a jury trial on all issues contained herein.

### FOURTH CAUSE OF ACTION

(Violations of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *Et Seq.*)

(On behalf of Plaintiffs De La Roza and Arzadon and the California Sub-Class)

115.    Plaintiffs De La Roza and Arzadon incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

116.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…." Cal. Bus. & Prof. Code § 17200.

*Fraudulent Acts and Practices*

117.    Any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice under the UCL. Similarly, any advertising that is deceptive, untrue or misleading constitutes a fraudulent business act or practice under the UCL.

CLASS ACTION COMPLAINT

118.    Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public. This conduct includes failing to disclose in its Off! insect repellent that the product contains excessive levels of benzene, a known human carcinogen.

119.    Similarly, Defendant has engaged, and continues to engage, in deceptive, untrue, and misleading advertising by representing that its Off! product is safe when, in fact, the product is not safe because it contains excessive levels of benzene which may be harmful to human health when used as directed over prolonged periods of time.

120.    By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

*Unlawful Acts and Practices*

121.        The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.[19]

122.        Defendant's conduct also violates Cal. Health & Safety Code § 111730, which prohibits the sale of any misbranded product. The Off! label is "false and misleading in any particular" because it fails to disclose to consumers, including Plaintiffs, that the product contains excessive levels of benzene, in violation of Health & Safety Code § 111730.

123.        By violating the FTC Act and/or Cal. Health and Safety Code § 111730, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

---

[19] Defendant's conduct also violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

CLASS ACTION COMPLAINT

*Unfair Acts and Practices*

124.    Any business practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an "unfair" practice under the UCL.

125.    Defendant has engaged, and continues to engage, in unfair business practices. This conduct includes representing that its Off! product is safe when, in fact, it is not safe because it contains excessive levels of benzene.

126.    Defendant has engaged, and continues to engage, in conduct that violates the legislatively declared policies of the UCL against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. Defendant gained an unfair advantage over its competitors, whose advertising for products must comply with the UCL.

127.    Defendant's conduct, including misrepresenting the safety and efficacy of its Off! product, is substantially injurious to consumers. Consumers are purchasing and, as instructed in the label, applying the product to their skin without knowledge that the product contains excessive levels of benzene, which can be absorbed into the body through the skin. Moreover, consumers, including Plaintiffs, would not have paid for insect repellent adulterated with excessive levels of benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiffs and the putative Class have "lost money or property" as required for UCL standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

128.    Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers, including Plaintiffs, reasonably rely on Defendant's representation that its product is safe when used as directed, consumers could not have reasonably avoided such injury.

CLASS ACTION COMPLAINT

Nor could consumers, including Plaintiffs, prior to purchase, have reasonably undertaken testing of Off! to determine that it contained excessive levels of benzene.

129.   By committing the acts described above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of the UCL.

WHEREFORE, Plaintiffs and the California Sub-Class seek an order for the restitution of all monies spent on Defendant's Off!, together with interest and costs herein incurred, and attorneys' fees, because such Off! products were acquired through acts of fraudulent, unfair, or unlawful competition.[20] In addition, because Off! contains excessive levels of benzene, a known human carcinogen, the measure of restitution should be rescission and full refund insofar as the insect repellent is worthless. But for Defendant's misrepresentations and omissions, Plaintiffs and the California Sub-Class would have paid nothing for insect repellent that is contaminated with excessive levels of a human carcinogen. Indeed, there is no discernible "market" for an over-the-counter insect repellent that is adulterated with excessive levels of a known human carcinogen. As recognized by the World Health Organization, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[21] In fact, the level of benzene detected in Defendant's Off! product (>2.0 ppm) exceed all FDA, EPA and NIOSH guidelines for such contaminants, no

---

[20] "Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.
"The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.
[21] https://www.who.int/ipcs/features/benzene.pdf.

CLASS ACTION COMPLAINT

matter whether the product at issue is a drug, cosmetic, pesticide, or drinking water. As a result, the level of benzene detected in Off! products renders the products valueless.

## LIMITATION OF ALLEGATIONS

130.    The allegations in this pleading are made pursuant to Maine and California law. To the extent Maine or law impose a duty or obligation on the Defendant that exceeds those required by federal law, Plaintiffs do not assert such claims. All claims asserted herein run parallel to federal law, i.e., the Defendant's violations of Maine and California law were also violations of federal law. Had Defendant complied with Maine and California law, it would also have complied with federal law.

131.    Additionally, Plaintiffs' claims do not seek to enforce federal law. These claims are brought under Maine and California law, notwithstanding the fact that such claims run parallel to federal law.

132.    As alleged in this pleading, the Defendant violated 7 U.S.C. § 136(q) and 40 C.F.R. § 156.10(a)(1)(vii) by distributing Off! without the requisite hazard and precautionary statements, which renders the product misbranded pursuant to 7 U.S.C. § 136(g). Federal law specifically prohibits the distribution of a misbranded pesticide.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

CLASS ACTION COMPLAINT

B.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of Maine and/or California law, plus pre- and post-judgment interest thereon;

C.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

D.      An order awarding attorneys' fees and costs, where permitted under applicable law, to Plaintiffs and the putative Class; and

E.      An order providing for all other such equitable relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  November 27, 2023

Brett D. Baber, Esq., Maine Bar No. 3143
Lanham, Blackwell & Baber
PO Box 2305
Bangor, ME 04402
207-942-2898
Bbaber@lanhamblackwellcom

/s/ R. Jason Richards
R. Jason Richards, Esq.
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 35502
850-202-1010

CLASS ACTION COMPLAINT